UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

RUBÉN VIVAS RUIZ,

    Plaintiff,

v.

JOSHUA M. AMBUSH, et al.,

    Defendants.

Civil No. 12-2046 (JAF)

## OPINION AND ORDER

We must decide whether a claim is time-barred under relevant provisions of Commonwealth law.

### I.

### Background

This case has its origin in the 1972 terrorist attack at Lod Airport in Tel Aviv, Israel, where several Puerto Ricans were killed. Plaintiff Rubén Vivas-Ruiz sustained life threatening injuries in that attack.

The American Center for Civil Justice, which sponsors litigation by victims of terrorism, recruited potential plaintiffs to sign a "Claimant and Center Agreement," under which the Center would cover all costs of investigating and litigating the potential plaintiffs' cases in return for twenty percent of any proceeds from litigation related to the Lod Airport attack. The potential plaintiffs also signed a power of attorney in favor of Michael Engelberg, the director of the Center. The Claimant and Center Agreement was

not a retainer agreement, but it did obligate the Center to secure counsel to commence litigation.

In furthering its duties under the agreements, the Center asked Joshua Ambush to draft and file a complaint, which he did in April 2006. Without assistance from other attorneys, Ambush began to litigate the case, known as <u>Franqui v. Syrian Arab Republic</u>, No. 1:06–cv–00734–RBW (D.D.C., filed Apr. 21, 2006), in which Rubén Vivas-Ruiz was a named plaintiff.

In August 2008, as the <u>Franqui</u> litigation progressed, the United States and Libya signed a settlement agreement that foreclosed terrorism-related suits against Libya. In exchange, Libya would compensate victims of terrorist acts it sponsored, by contributing to a settlement fund to be administered by the United States Department of State. The fund would pay $10 Million to the estate of each person killed in an act of Libyan-sponsored terrorism.

In December 2008, Ambush traveled to Puerto Rico and presented plaintiffs, including Vivas-Ruiz, with a retainer agreement that revoked Engelberg's power of attorney, retroactively retained Ambush as the heirs' counsel for the <u>Franqui</u> litigation and for the administration of their claims in the Libyan settlement, and awarded Ambush ten percent of any recovery.

Ambush then worked to obtain settlement funds for the <u>Franqui</u> plaintiffs. He dismissed the <u>Franqui</u> litigation as the settlement agreement required, and he gathered the documents that the State Department requested. By April 2009, the State Department paid $10 Million to Ambush's trust account for each of the two estates. Of this $10 Million, Ambush sent $2 Million to the Center pursuant to the Claimant and Center

Agreements, kept $1 Million pursuant to the retainer agreements, and sent $7 Million to the heirs.

The heirs alleged that the retainer agreements were void because Ambush secured their consent by deceit, known in Spanish as *dolo*. Puerto Rico law provides that "dolo" is one reason to set aside a contract. See 31 L.P.R.A. § 3404. According to the heirs' complaint, Ambush failed to disclose at their meeting that the Center had paid him for his work, falsely told them that the Center had done nothing on the estates' behalf, and misrepresented that the estates' compensation was contingent on the heirs' signature of the retainer agreements. The First Circuit ultimately agreed. See Estate of Berganzo-Colón v. Ambush, 704 F.3d 22 (1st Cir. 2013).

Vivas-Ruiz filed this suit alleging that he was falsely induced to sign a retainer agreement for attorney's fees. (Docket No. 1.) On June 26, 2012, Ambush moved to dismiss the suit under Rule 12(b)(5), asserting insufficient service of process. We denied Ambush's motion. (Docket No. 19.) Ambush filed a subsequent motion to dismiss under Rule 12(b)(6). (Docket No. 20.) We grant the motion.

## II.

### Legal Standard

A plaintiff's complaint will survive a motion to dismiss if it alleges sufficient facts to establish a plausible claim for relief. See Fed.R.Civ.P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of plaintiff. San Geronimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 471 (1st Cir. 2012) (citation omitted).

### III.

### **Discussion**

A few principles guide our resolution of the statute-of-limitations question at issue here. Under Commonwealth law, an action for nullification of a contract cannot be brought once four years have passed since the execution of the contract. 31 L.P.R.A. § 3512; Rivera v. Heirs of Díaz, 70 P.R.R. 168, 172–73 (1949); see also Almodóvar v. Méndez Román, 125 P.R. Offic. Trans. 218 (1990). In the Civil Code, this principle is known as caducity. See Ortega Candelaria v. Orthobiologics LLC, 661 F.3d 675, 678 n.4 (1st Cir. 2011) (discussing principle of caducity.); see also J. Puig Brutau, Fundamentos de Derecho Civil Vol. II No. 1, p. 323 (Bosch, Barcelona, 1971).

Caducity does not allow for a reasonable period for discovery, nor will any other event toll the statute of limitations. In other words, lapse of time extinguishes the right to a cause of action precluding even judicial tolling. Ortiz Rivera v. Heirs of González Martínez, 93 P.R.R. 549, 552–56 (1966); see also Farnsworth & Co. v. P.R. Urban Renewal & Housing Corp., 289 F.Supp. 666 (D.P.R. 1968) (a caducity term (1) has the effect of extinguishing the right to a cause of action; (2) admits no interruption; it can be raised as a defense by the court *ex-officio judicis*; and (3) the cause of action is barred forever once the caducity period has elapsed.). Caducity is conceptually distinct from prescription. See Muñoz-Rodriguez v. Ten General, 167 D.P.R. 297 (2006).[1] Prescription, unlike caducity, can be interrupted as provided by law. See 31 L.P.R.A. § 5303. Within prescription, interruption can occur through the institution of an action before the courts; by the extrajudicial claim of a creditor; and by any act of

---

[1] Official Puerto Rico Supreme Court translation not available at the time of signing.

acknowledgment of the debt by the debtor. Id.; see also Fireman's Ins. Co. of Newark, N.J. v. Gulf Puerto Rico Lines, 349 F.Supp. 952 (D.P.R. 1972).

Here, Vivas-Ruiz executed the retainer agreement with Ambush on December 15, 2008. Accordingly, an action to nullify the agreement should have been brought on or before December 15, 2012. Vivas-Ruiz filed suit on December 26, 2012. It follows that the action for nullification is time-barred.

Vivas-Ruiz, however, claims that the retainer agreement falls under the Commonwealth Civil Code's fifteen-year catch-all provision. Under the Civil Code, contract claims that are covered by code provisions but are not designated for special prescriptive treatment automatically fall within a fifteen-year prescriptive period. Caribbean Mushroom Co., Inc. v. Government Development Bank for Puerto Rico, 102 F.3d 1307, (1st Cir. 1996); see also Kali Seafood, Inc. v. Howe Corp., 887 F.2d 7, 9 (1st Cir.1989) (Civil Code's fifteen-year term applies to "contracts and other personal claims 'for which no special term of prescription is fixed'"). But, the retainer agreement would only fall within the ambit of the fifteen-year catch-all provision if no other term applied. Here, another term does apply. See Arrieta Gimenez v. Arrieta Negron, 672 F.Supp 46, 49 (D.P.R. 1987).

Alternatively, Vivas-Ruiz claims that the four-year limitations period should begin to run not on December 15, 2008, when appellant executed the retainer agreement, but on December 9, 2009—when his wife received notice that the agreement she signed with Ambush may have been fraudulent. But, the discovery rule—the principle that the statute-of-limitations clock begins to run when the claimant knew or should have known that the defendant violated his rights, see, e.g., Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 14 (1st Cir. 2005)—would only apply if we construed this action as one

sounding in tort.  This, however, is a contractual dispute.  <u>See</u>, e.g., <u>King v. TL Dallas & Co., Ltd.</u>, 270 F.Supp.2d  262, 269 (D.P.R. 2003) (contract cases involve a previously-existing relationship between the parties, whereas in tort liability cases, a plaintiff's right accrues at the time of the injury.).

## IV.

## Conclusion

For the foregoing reasons, we hereby **GRANT** the defendants' motion to dismiss. (Docket No. 20.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 12th day of June, 2014.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE
